IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-60049-CIV-ALTONAGA

In re:

**DENIS CHIRA**,  Debtor.
_____/

**ELIZABETH CHIRA**,

        Appellant,

vs.

**SONYA SALKIN**, as Chapter 7 Trustee
of the Estate of Denis Chira,

        Appellee.
_____/

## <u>ORDER</u>

Elizabeth Chira ("Appellant" or Elizabeth") appeals a Final Judgment (R. 163) of the United

States Bankruptcy Court for the Southern District of Florida (the "bankruptcy court") that (1) allows

Appellant's unsecured non-priority claim in the amount of $178,441.69; (2) equitably subordinates

her priority unsecured claim and her non-priority claim to the claims of all other creditors; and (3)

finds that, in her capacity as one-half owner of the Sheldon Beach Hotel (the "Hotel"), Appellant is

not entitled to any portion of the gross proceeds of the sale of the Hotel exceeding one-half of

$5,850,000.[1]  This is the second consolidated appeal considered by the Court in Debtor, Denis Chira's

("Denis[']" or "Debtor['s]") Chapter 7 case.  The undersigned issued a decision in the first

consolidated appeal on April 13, 2007.  *See In re Chira*, No. 06-61410, 2007 WL 1160183 (S.D. Fla.

_____

[1] Initially, the Appellants were Elizabeth Chira and Eliezer Botton, who were seeking review of the bankruptcy court's Final Judgment in favor of Appellee, Sonya Salkin.  Mr. Botton determined he did not wish to pursue his appeal and on May 28, 2007, he and Ms. Salkin filed a stipulation of dismissal.  (*See* [D.E. 7]).

CASE NO. 07-60049-CIV-ALTONAGA

April 13, 2007) ("*Chira I*").  That ruling is now under review.

The Court has carefully considered the briefs submitted by the parties,[2] applicable law, pertinent portions of the record, and the oral arguments presented.

## I. BACKGROUND

**A.**    *Events Preceding the Chapter 7 Case*

This appeal arises from an adversary proceeding in Denis' Chapter 7 bankruptcy case.  Denis was married to Appellant from 1970 until they divorced in 1999.  (*See* R. 162, p. 4).[3]  At all relevant times, Appellant and Denis jointly owned the Sheldon Beach Hotel, a 42-room hotel located in Hollywood, Broward County, Florida.  (*See id*.).

For many years, Denis and Appellant operated the Hotel, and at various times they operated a nightclub and other stores in the retail space on the first floor of the Hotel.  (*See id*. at 5).  In 1978, Denis and Appellant incorporated Sheldon Hotel Lounge Corporation (the "Lounge Corp.").  Until January 2005, they each owned 50% of the issued and outstanding common stock of Lounge Corp.. (*See id*.).  Through the years, Denis and Appellant (1) deposited the Hotel's rents and receipts, the retail rents from the stores on the first floor, and receipts from their nightclub into Lounge Corp.; (2) paid the operating expenses of the Hotel and the nightclub from Lounge Corp.; and (3) drew from Lounge Corp. such compensation, advances, or capital distributions as Lounge Corp. could afford to pay them.  After the nightclub closed, they rented out the nightclub space to a series of tenants,

---

[2] Jose Saal filed a memorandum as an Intervenor in support of the bankruptcy court's determination that Appellant is not entitled to any portion of the gross proceeds of the sale of the Hotel exceeding one-half of $5,850,000. (*See* [D.E. 14-2]).

[3] References to the record on appeal are indicated by "R," followed by the docket entry number from the bankruptcy court.

CASE NO. 07-60049-CIV-ALTONAGA

and deposited those rents into Lounge Corp. as well.  (*See id*.).

In September 1993, Denis and Appellant borrowed $550,000 from Family Bank and secured the loan with a first mortgage on the Hotel (the "Mortgage").  This Mortgage is now owned by Appellant's brother, Eliezer Botton.  (*See id*. at 6).

As a result of problems in their marriage, Denis and Appellant entered into a post-nuptial property settlement agreement on November 16, 1993 (the "1993 Post-Nuptial Agreement").  (*See id*. at 5, 6).  One of the provisions of this agreement was that neither party could alienate his or her interest in the Hotel without the prior written consent of the other party.  At the time, the Hotel was unencumbered by any liens.  (*See id*. at 6).

On December 9, 1996, Denis and Appellant converted the Hotel from a tenancy by the entirety into a tenancy in common, with each party owning an undivided 50% interest.  (*See id*.).  At all times since, Appellant has owned an undivided 50% interest in the Hotel, as tenant in common, and her interest is encumbered only by the Mortgage.  (*See id*.).

In the divorce proceedings, on May 14, 1999, Denis and Appellant entered into a mediation agreement which partially amended, but otherwise ratified, the 1993 Post-Nuptial Agreement.  (*See id*.).  The 1993 Post-Nuptial Agreement and the May 14, 1999 mediation agreement were referred to and incorporated in the final judgment of divorce entered by the state court ("divorce court") on June 17, 1999.  (*See id*. at 7).  The judgment provided, among other things, that Denis and Elizabeth would continue to own the Hotel as joint owners.  (*See id*. at 9).  Nonetheless, on June 2, 2000, Denis executed and delivered to City First Mortgage Corp. ("City First") a promissory note in the amount of $425,000 and a Mortgage and Security Agreement on his 50% interest in the Hotel.  (*See R. 162, p. 7).  The bankruptcy court later determined "this encumbrance clearly violated the 1993

3

CASE NO. 07-60049-CIV-ALTONAGA

Post-Nuptial Agreement and the final judgment in Denis and Elizabeth's divorce, both of which were matters of public record." (*Id*.).

On September 22, 2000, Denis and Appellant reached a second mediated agreement. This second agreement was approved by the divorce court on October 13, 2000. Among the provisions of the second agreement was an agreement in principle to sell the Hotel jointly to anyone for $4,750,000. This second settlement agreement was recorded on October 27, 2000 as an exhibit to the order approving it. (*See id*. at 7-8).

On November 14, 2000, Denis obtained an additional $150,000 loan from City First. (*See id*. at 7-8). On that date, Denis executed and delivered to City First an Advance Note in the amount of $150,000, a Consolidated Modified Note in the amount of $573,473.26, and a Mortgage Modification Agreement. (*See id*. at 8). City First assigned the instruments described to First Trust and other assignees on or about December 12, 2000, and these other assignees further assigned their interests to First Trust Corporation ("First Trust"). (*See id*.).

On or around July 22, 2001, Denis entered the Hotel and began removing records. A dispute between Denis and Elizabeth arose over possession, and the Hotel was closed. (*See id*.). Nevertheless, in the summer of 2001, four of five retail spaces in the Hotel were occupied. The two northernmost bays were occupied (rent free) by Elizabeth's company, Swim & Fun Wear, Inc. d/b/a Swim & Fun Wear. The adjacent two bays were occupied by a restaurant tenant, Pinasse, Inc. d/b/a Chez Andre's, which struggled during the off season to pay its rent. The next bay was occupied (rent free) by Denis' company, Bikers Nest of Hollywood, Inc., and the southernmost two bays were occupied by Distinctive USA, Inc. for rent. (*See id*.).

On July 26, 2001, First Trust filed suit seeking foreclosure of its mortgage, alleging that Denis

4

CASE NO. 07-60049-CIV-ALTONAGA

was in default of making all payments due since July 1, 2001.  Appellant cross-claimed against Denis for damages.  (*See id*. at 10).

Thereafter, on August 30, 2001, Appellant filed an emergency motion in the divorce court seeking the appointment of a receiver.  The court deferred ruling on Appellant's motion.  Appellant renewed her motion to appoint a receiver, alleging misconduct by Denis, and the divorce court granted her renewed motion.  On October 25, 2001, the divorce court appointed Dean Liotta as receiver (the "Receiver") of both the Hotel and of Lounge Corp.  The divorce court informed the parties they were not permitted to deal in any way with the Hotel or their interests in the Hotel.

Pursuant to authority granted by the divorce court, the Receiver entered into negotiations for the sale of the Hotel with Jose Saal, who was acting as nominee for an undisclosed purchaser.  (*See id*. at 14).  Mr. Saal presented an offer of $5,850,000 with a $100,000 deposit.  Thereafter, the divorce court authorized an agreement between the Receiver and Mr. Saal for the sale of the Hotel (the "Saal Contract").  (*See id*.).

On January 3, 2005, a general magistrate issued a report to the divorce court regarding the debts owed by Denis to Appellant.  (*See id*. at 15).  Denis did not object to the report and the divorce court approved the report on January 21, 2005.  The magistrate found Denis owed Appellant $133,809.95 for child support and related matters and $206,370.00 in attorney's fees and costs incurred in Appellant's pursuit of child support.  (*See id*.).  Interest accrued through April 14, 2005 added another $11,545.71.  Child support and health insurance, for the time period between the date of the hearing before the general magistrate and April 14, 2005 comprised another $8,334.00. Appellant's total child support claim consisted of $360,059.66.  The magistrate further recommended that $129,620, which Denis had collected in rents and security deposit from Distinctive USA for

5

leasing space on the first floor of the Hotel property should be charged against Denis if he did not

furnish proof, within thirty days after entry of the order approving the recommendations, that he had

spent the funds collected on the Hotel. (*See id*. at 17). Before the thirty days expired, Elizabeth and

Denis reached another settlement agreement.

**B.     *The Chapter 7 Case and Adversary Proceedings***

On April 14, 2005, certain creditors filed an involuntary bankruptcy petition against Denis,

and the bankruptcy court entered an order for relief under Chapter 7 on June 20, 2005. (*See id*.).

Sonya Salkin ("Appellee" or "Salkin") was appointed as Trustee.

Thereafter, the Trustee and Saal reached a "Settlement Agreement" concerning assumption

of the Saal Contract (the same Saal Contract initially executed by the Receiver and Saal during the

divorce court proceedings). (*See* R. 162, p. 49). Under the Settlement Agreement, the Trustee

agreed to seek permission from the bankruptcy court to assume the Saal Contract in accordance with

Section 365 of the Bankruptcy Code and sell the Hotel for $5,850,000, the pre-bankruptcy sale price

established under the original Saal Contract. In exchange for these concessions, Saal agreed to pay

the estate an additional amount of $2,000,0000, to be used as a litigation fund for the estate. (*See

id*.). On February 28, 2006, Salkin moved to assume the Saal Contract. The bankruptcy court

granted Salkin's request to assume the Saal Contract and allowed the Trustee to move forward with

the sale of the Hotel to Saal for $5.85 million, as previously agreed.

While the foregoing proceedings involving *Chira I* were pending, Salkin commenced an

adversary proceeding against creditors, including Appellant, in which Salkin sought avoidance of

certain transfers, equitable subordination of certain claims, and other relief. (*See* R. 1). This appeal

relates solely to Salkin's affirmative claims against Appellant. (*See id*. at 5-6). Upon completion of

CASE NO. 07-60049-CIV-ALTONAGA

the adversary proceeding, the bankruptcy court issued Findings of Fact and Conclusions of Law and Memorandum Opinion (R. 162) as well as the Final Judgment.  (R. 163).   The bankruptcy court approved Appellant's entire child support claim, in the total amount determined by the magistrate during the divorce proceedings. (*See id*. at 16).  The court, however, denied Appellant's non-priority claim involving the rent and security deposit collected from Distinctive USA.

As noted, during the divorce proceedings the magistrate recommended that $129,620, the amount Denis had collected in rents and security deposit from Distinctive USA for leasing space on the first floor of the Hotel property, should be charged against Denis if he did not furnish proof, within thirty days after entry of the order approving the recommendations, that he had spent the funds collected on the Hotel.   The bankruptcy court, however, denied Appellant's claim involving Distinctive USA because Denis and Appellant reached a settlement agreement before the thirty-day period afforded by the divorce court expired.  In reaching its determination, the bankruptcy court also considered the parties' arrangement regarding the collection of rents for spaces leased.  During the time Denis leased space to Distinctive USA, Denis and Appellant had an agreement pursuant to which Denis could lease the south corner of the Hotel (the space occupied by Distinctive USA) for his benefit and Appellant could have a double bay on the north corner of the building for her sole benefit. (*See id*. at 17).  Accordingly, the bankruptcy court denied Appellant's claim regarding the rent collected by Denis from Distinctive USA, finding Appellant had suffered no loss.

The bankruptcy court denied Appellant's claim involving the cost associated with the Receiver.  In his report issued during the divorce proceedings, the magistrate did not determine the amount associated with the cost of the Receiver and the Receiver's attorney's fees.  (*See id*.). Eliezer Botton paid $375,000 to satisfy the claims by the Receiver and his counsel, and charged the

Hotel the $375,000, plus interest.  (*See id.*).  Appellant claimed her share of the cost associated with the Receiver ($187,500) as part of her nonpriority claim.

In denying that part of Appellant's non-priority claim involving the cost associated with the Receiver, the bankruptcy court found that "at least as much of the Receiver's and his counsel's efforts were devoted to dealing with Elizabeth's misconduct and her unsuccessful opposition to many of the Receiver's actions."  (*Id.* at 18).  The bankruptcy court determined that around the time of his appointment, the Receiver learned Denis had leased retail space to Joe's Ocean Market.  The Receiver promptly told Denis to vacate the store space in which Denis had operated his stores on a rent-free basis, and Denis did so.  (*See id.* at 31).  In contrast, Appellant refused either to leave her store (Swim & Fun Wear) or to pay rent to the Receiver.  As a result of Appellant's actions, the Receiver obtained an order clarifying that the receivership was over the entire Hotel and the Lounge Corp., and that no one was permitted to interfere with the Receiver's control over the property.  Copies of the order were served on respective counsel for Denis and Appellant, and upon Mr. Botton.  (*See id.*).

In denying part of Appellant's claim involving the cost associated with the Receiver, the bankruptcy court emphasized that Appellant had ignored the order obtained by the Receiver regarding the management of the property.  The bankruptcy court noted that Appellant rented, in her own name, one of the spaces to someone else, took a security deposit, and refused to turn over the rents until the Receiver obtained a further court order requiring her to disgorge the funds improperly collected.  Appellant also refused to pay rent for the Swim & Fun Wear space and eventually Swim & Fun Wear was evicted by efforts of the Receiver.  (*See id.*).  The bankruptcy court further found Appellant interfered with tenants, and even served a three-day eviction notice on one of them.

CASE NO. 07-60049-CIV-ALTONAGA

Additionally, in reaching its decision, the bankruptcy court considered an order issued by the divorce court on August 2003 in which that court indicated it had admonished Appellant, on multiple occasions, for her interference with the receivership. (*See id*. at 32).

In denying Appellant's claim involving the Receiver's costs, the bankruptcy court also evaluated the Receiver's attorney's testimony given during the adversary proceeding. The Receiver's counsel testified that Appellant was unnecessarily litigious, "going beyond the bounds of legitimate arguable challenges to the Receiver's actions after the initial months of the receivership." (*Id*.).

The bankruptcy court equitably subordinated Appellant's claims to all other claims either allowed or to be allowed in the Debtor's Chapter 7 case pursuant to 11 U.S.C. § 510(c). The court determined the damages Appellant caused Denis exceeded the aggregate of her allowed claims and subordination of Appellant's claims was therefore warranted. (*See* R. 162, p. 50). In deciding that Appellant's claims would be subordinated, the bankruptcy court found Appellant, as Denis' partner in Lounge Corp., part owner of the Sheldon Beach Hotel, and Denis' former spouse, to be an "insider," whose claims could be subordinated more easily than those of parties who had dealt with the Debtor at arms' length.

The bankruptcy court further noted that even if Appellant was not an insider to Denis, her claims could nevertheless be subordinated on the basis of specific wrongful conduct. (*See id*. at 44). In this context, the court recognized that a common type of misconduct is a breach of fiduciary duty. The court found Appellant had violated her fiduciary duties of loyalty and care to the Hotel, which Appellant and Denis had operated prior to the appointment of the Receiver as a joint venture. (*See id*. at 44, 46).

The court applied principles controlling partnership law to the joint venture. The court found

9

CASE NO. 07-60049-CIV-ALTONAGA

Appellant had a duty to do no harm to the joint venture (the Hotel), a duty to hold as trustee for the partnership any benefit she derived from the partnership property, a duty not to usurp a partnership opportunity, and a duty not to deal with partnership property on behalf of one holding an adverse interest. Appellant also had a duty of care in acting on behalf of the partnership. The bankruptcy court determined all of these duties were to be measured by an obligation of good faith and fair dealing. The bankruptcy court found Appellant's conduct demonstrated complete disregard for her duties and obligations. (*See id.*).

The bankruptcy court described the acts committed by Appellant which warranted the subordination of all of her claims to the claims of all other creditors. Appellant improperly removed Denis as a director of Lounge Corp.. Appellant misused Lounge Corp. in entering into a commercially unreasonable lease with Swim & Fun Wear for her benefit and to the detriment of Denis. Appellant refused to return to mediation in January 2001, contrary to her earlier agreement to do so. The bankruptcy court also found Appellant made a secret pact with her brother to use her funds to purchase the first mortgage on the Hotel when it was on the verge (but not actually in) default, and to subject Denis thereby to five years of eighteen percent interest[4] and, through Eliezer's refusal to accelerate the mortgage debt, to accrue unjustified late charges. (*See id.*).

The bankruptcy court further found Appellant unlawfully forced Denis to give Appellant a consent judgment for $2,500,000, an amount, the court determined, grossly in excess of Denis' actual

---

[4]Appellant borrowed against a mortgage on her house to obtain sufficient funds to purchase the first mortgage on the Hotel. Appellant testified during the adversary proceeding that the bank would not sell the mortgage on the Hotel to her and thus she had her brother, Botton, purchase the mortgage on the Hotel with her funds. Elizabeth had her brother and his wife sign a note which promised Appellant a fixed eighteen percent return. The bankruptcy court concluded "the structure of the [Botton]-Elizabeth note was singularly calculated to burden Denis' half of the [Hotel] with an 18% interest rate, the benefit of which would flow through to Elizabeth." (R. 162, p. 29).

CASE NO. 07-60049-CIV-ALTONAGA

obligations to Appellant.  The bankruptcy court considered Appellant to have engaged in a long series of unreasonable and unsuccessful objections, motions, and appeals, variously attacking the City First second mortgage, the sale to Saal, and the Receiver and his counsel, thereby causing the Receiver's costs and attorney's fees to increase greatly.  (*See id*.).

The bankruptcy court found Appellant continued to make commercially unreasonable leases in order to depress the value of the Hotel.  (*Id*. at 47).  The court found Appellant incurred other unnecessary costs to the detriment of the estate.  Appellant  unnecessarily defended a valid wage overtime claim, causing a $15,000 claim to become a $70,000 settlement payment from Lounge Corp..  Appellant continued to draw a grossly excessive salary even though she hired an experienced manager for the Hotel and paid him $800 per week to undertake all daily functions of administration.  (*See id*.).  The bankruptcy court further found Appellant withheld important documents in this case, as well as failed to account for large sums of Hotel income.  (*See id*.).  The court determined Appellant has not been able to reconcile substantial funds, reported as Hotel revenues and as expenses by Lounge Corp.'s accountant, with the financial records.

In support of its decision to subordinate Appellant's claims, the court also cited Appellant's attempt to impede the sale of the Hotel, which has kept Denis in a position where he cannot afford to move out of the Hotel.  According to the bankruptcy court, Denis has continued for years to accrue charges for a Hotel room averaging more than $2,000 per month, and to accrue the obligation to pay additional living expenses for his daughters, an obligation which was supposed to end with the sale of the Hotel under the terms of the 2000 mediation agreement.

As part of its decision to subordinate Appellant's claims, the court examined the harm to Denis caused by Appellant's misconduct.  The court concluded Denis' damages consist of the

difference between the amount of Denis' equity in the Hotel at the time Appellant's conduct became

an unfair obstacle to the sale of the Hotel and the amount of the estate's equity in the Hotel today.

The court also found that at least one-half of the $375,000 in Receiver costs and attorney's fees was

attributable to Appellant's misconduct or to the delay in closing caused by her misconduct.  The delay

in closing resulting from Appellant's misconduct began no later than February 2001, when Appellant

insisted on shifting $800,000 of value in a $4,850,000 contract to Swim & Fun Wear.  The court thus

concluded Appellant's total claim of $538,501.35 is exceeded by the damages she has caused to

Denis' equity in the Hotel and subordination of her claims was appropriate.  (*See id*. at 51).

Turning to the issues addressed in *Chira I*, the bankruptcy court issued a ruling regarding

Appellant's rights to the $2 million Saal agreed to pay the estate under the Settlement Agreement

between Saal and the Trustee.  The bankruptcy court determined Elizabeth was not entitled to any

portion of the $2 million Saal agreed to pay the estate because the Settlement Agreement was a

separate agreement (from the Saal Contract) between the Trustee and Saal, and Elizabeth had no

rights to the $2 million premium under that agreement.  (*See id*. at 49).  The bankruptcy court also

noted that the Settlement Agreement did not affect or modify any of Elizabeth's rights under the Saal

Contract, and Elizabeth would therefore receive exactly what she had previously agreed to under that

contract.

The bankruptcy court's finding regarding the $2 million fund was incorporated in another

order issued by the bankruptcy court, the Order Granting Trustee's Motion to Clarify Order Granting

Motion to Assume Executory Contract and Approving Settlement Agreement (the "Order Granting

Motion to Clarify").  Before the present appeal of the bankruptcy court's findings in the adversary

proceeding reached this Court, Appellant appealed the bankruptcy court's Order Granting Motion

CASE NO. 07-60049-CIV-ALTONAGA

to Clarify in case number 07-60199-Civ. Appellant also appealed the bankruptcy court's ruling regarding the assumption of the Saal Contract in case number 06-61410-Civ. The Court affirmed the bankruptcy court's orders. *See In re Chira*, No. 06-61410, 2007 WL 1160183 (S.D. Fla. April 13, 2007). The Court entered two subsequent orders, by agreement of the parties, to establish that the Order in *Chira I*, in case number 06-61410, would control the disposition of case number 07-60199, as well as a later appeal filed in case number 07-60537-Civ. (*See* Case No. 06-61410 [D.E. 28, 30]).

In its Final Judgment during the adversary proceeding at issue here, the bankruptcy court: (1) allowed Appellant's unsecured non-priority claim in the amount of $178,441.69 (a lesser amount than what Appellant had claimed); (2) equitably subordinated Appellant's priority unsecured claim for child support and her unsecured non-priority claim to the claims of all other creditors (except to a portion of Eliezer Botton's claim that was also subordinated); and (3) decreed that, in Appellant's capacity as one-half owner of the Hotel, she was not entitled to any portion of the gross proceeds of the sale of the Hotel exceeding one-half of $5,850,000. The court again held Appellant was not entitled to any portion of the $2 million Saal agreed to provide under the subsequent Settlement Agreement between Saal and the Trustee. (*See id*.).

A timely Notice of Appeal was filed on November 27, 2006. The appeal was docketed in this Court on January 12, 2007. Appellant has identified the following issues for the Court's consideration:

1. Did the bankruptcy court err in disallowing significant portions of Appellant's unsecured non-priority claim?

2. Did the bankruptcy court err in equitably subordinating Appellant's claims to the claims of all other creditors?

13

CASE NO. 07-60049-CIV-ALTONAGA

3.      Did the bankruptcy court err in ruling that Appellant has no entitlement to any portion of the proceeds from the sale of the Hotel in excess of $5,850,000?

## II. ANALYSIS

**A.**    *Standard of Review*

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a). A bankruptcy court's factual findings may not be set aside unless they are clearly erroneous. *See Commodore Holdings, Inc. v. Exxon Mobil Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). A district court reviews a bankruptcy court's conclusions of law *de novo*. *See Commodore*, 331 F.3d at 1259; *In re Calvert*, 907 F.2d 1069, 1071 (11th Cir. 1990).

A bankruptcy court's decision to allow or disallow a claim is reviewed under the abuse of discretion standard. *See In re Jazz Casino Co., L.L.C.*, 2004 WL 2095616, at *5 (E.D.La. 2004) (noting that a bankruptcy court's decisions based upon equitable grounds are reviewed for abuse of discretion) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); *In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991)); *see also Manufacturers Trust Co. v. Becker*, 338 U.S. 304, 310 n.7 (1949) (recognizing that the power of disallowance of claims conferred on the bankruptcy courts embraces the rejection of claims in whole or in part according to the equities of the case and emphasizing that a bankruptcy court may therefore limit the amount of claims in view of equitable

14

CASE NO. 07-60049-CIV-ALTONAGA

considerations) (citing 11 U.S.C. § 11).  A bankruptcy court's decision on equitable subordination

is also reviewed under the abuse of discretion standard.  *See In re Racing Services, Inc.*, 340 B.R.

73, 76 (8th Cir. BAP 2006) (internal citations omitted); *see also In re Valley-Vulcan Mold Co.*, 237

B.R. 322, 326 (6th Cir. BAP 1999).

**B.**     ***The Bankruptcy Court's Allowance of the Unsecured Non-Priority Claim in the Amount
of $178,441.69***

In her capacity as a creditor of Denis' bankruptcy estate, Elizabeth asserted two categories

of unsecured claims: (1) an unsecured priority claim for child support and related items and (2) an

unsecured non-priority claim for other items.  (*See App. Br.*, p. 12).  According to Appellant, the

bankruptcy court correctly allowed her priority claim in the amount of $360,059.66.  However, she

maintains the court erred when it disallowed certain portions of her unsecured non-priority claim.

(*See id.*).

Appellant asserted a non-priority claim in the total amount of $504,150.99.  (*See id.*).

According to Appellant, "each component of this claim was based upon the report of the 'general

magistrate' appointed by the divorce [court] to conduct evidentiary hearings on [her] and Denis'

post-divorce financial disputes."  (*Id.*).  Appellant maintains the bankruptcy court erred when it

reduced her non-priority claim by $324,889.30.  (*See id.* at 12).  Specifically, Appellant argues the

bankruptcy court committed four errors in calculating her claim.  The first, a mathematical error of

$800 involving Appellant's insurance claim, is conceded as error.  (*See Trustee's Answer Brief*, p.

5).  Two other claimed errors involve the bankruptcy court's exclusion of $129,620, and interest on

that sum, from Appellant's claim.  The final error in calculating her claim, according to Appellant, is

the bankruptcy court's failure to charge Denis with her half of the $375,000 in Receiver's fees and

CASE NO. 07-60049-CIV-ALTONAGA

attorney's fees.

1.   The bankruptcy court's exclusion of $129,620 (and interest) from Appellant's unsecured non-priority claim

The amount of $129,620 represents funds Denis allegedly collected from Distinctive USA and failed to reinvest into hotel maintenance and repairs.  Appellant argues the bankruptcy court's failure to include that amount in her claim runs contrary to the recommendations of the magistrate during the divorce proceedings and the divorce court's order adopting the recommendations.  (*See App. Br.*, pp. 12-13).  Further, Appellant contends that because the bankruptcy court deducted the amount associated with Distinctive USA from her claim, the court erroneously disallowed pre-petition interest on this claim in the amount of $4,378.02.[5]  (*See id.* at 13-14).

The Trustee emphasizes that the magistrate did not find that the $129,620 sum was due from Denis to Appellant.  Rather, the magistrate merely recommended that the court "'determine the Petitioner/Former Wife's entitlement to these funds from the Respondent/Former Husband' in the event that Denis didn't provide proof that the funds he collected were spent for the benefit of the hotel."  (*See Trustee's Ans. Brief*, p. 5).  The Trustee further argues it is illogical to interpret the divorce court's decision to mean that the entire $129,620 "was even up for discussion," because Denis would have been entitled to one-half of the funds generated from rent payments made by Distinctive USA.  (*Id.*).

The Trustee asserts that Denis and Elizabeth had a longstanding arrangement under which they agreed to divide equally the retail spaces of the Hotel, and each was responsible for collecting

---

[5] The amount of $4,378.02 is the difference between the interest claimed by Appellant on her equitable distribution claim ($8,759.73) and the amount of interest on that claim that the bankruptcy court did allow, $4,381.71. (*See Appellant's Brief*, p. 14, n.7).

16

CASE NO. 07-60049-CIV-ALTONAGA

rent from his or her respective tenants.  Accordingly, the Trustee argues, the bankruptcy court properly determined that the funds collected by Denis from Distinctive USA, for the two retail spaces the latter rented from the Hotel, represented a benefit identical to the benefit Elizabeth received from two other retail spaces for which she collected rent payments.  (*See id.* at 6).  Thus, the bankruptcy court's ruling was consistent with the parties' arrangement and was equitable because Appellant suffered no loss.  (*See id.*).

Appellant concedes the magistrate did not formally determine her claim regarding the rent payments made by Distinctive USA, but nonetheless argues that under the circumstances, the bankruptcy court erred when it substituted its own equitable ruling for the ruling "it appears [was] . . . intended by the divorce court."  (*Appellant's Corrected Reply Brief*, p. 10).  Appellant's argument is unavailing.

As courts of equity, bankruptcy courts have discretion when deciding which claims will be allowed in whole or in part.  *See Manufacturers Trust Co.*, 338 U.S. at 310, n.7; *see also U.S. v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990) (noting that as courts of equity, bankruptcy courts have broad authority to modify creditor-debtor relationships) (citing *Pepper v. Litton*, 308 U.S. 295, 303-304 (1939); *United States National Bank v. Chase National Bank*, 331 U.S. 28, 36 (1947); *Katchen v. Landy*, 382 U.S. 323, 327 (1966)).  A court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) (internal citations omitted).  A court may also abuse its discretion by applying law in an unreasonable or incorrect manner.  *Id.*  An abuse of discretion may also occur if a court imposes some harm, disadvantage, or restriction upon someone that is unnecessarily broad or does not result in any

17

CASE NO. 07-60049-CIV-ALTONAGA

offsetting gain to anyone else or society at large. *Id.*

The record supports the bankruptcy court's decision to reduce Appellant's claim. Although the bankruptcy court acknowledged Denis did not provide proof that the sums he had collected from Distinctive USA were spent on the Hotel, as required by the divorce court, the bankruptcy court noted that Denis had subsequently entered into a settlement agreement with Appellant. Further, the parties had obtained the divorce court's approval of the settlement before the thirty days given to Denis to furnish the proof had expired. (*See* R. 162, p. 17). Thus, it was not clearly erroneous for the bankruptcy court to conclude that Appellant's claim involves a matter that had been resolved by the parties under a previous settlement agreement. (*See id.*).

Additionally, in deciding to exclude the $129,620 sum from Appellant's claim, the bankruptcy court was mindful of relevant equitable considerations. *See In re Jazz Casino Co.*, 2004 WL 2095616 at *5 (internal citations omitted); *see also Manufacturers Trust Co.*, 338 U.S. at 310, n.7. The court emphasized that while Denis would have been entitled to one-half of the sum in any event, he and Appellant entered into an agreement in December 1999, during the time Denis leased space to Distinctive USA, pursuant to which Denis could lease the south corner of the Hotel (the space occupied by Distinctive USA) "for his sole benefit" and Appellant could have a double bay on the north corner of the building for her sole benefit. (*See* R. 162, p. 17). Therefore, the bankruptcy court determined, "Denis owes nothing to Elizabeth on this account." (*Id.*).

Based on the record and given the parties' own arrangement, the bankruptcy's decision not to allow Appellant's claim in the amount of $129,620 was not an abuse of discretion. The court neither made findings of fact that were clearly erroneous nor did it apply law in an unreasonable or incorrect manner.

CASE NO. 07-60049-CIV-ALTONAGA

2.     The bankruptcy court's decision to disallow Elizabeth's claim in the amount
of $187,500, representing her share of the Receiver's fees and attorney's fees

According to Appellant, the bankruptcy court erred when it disallowed that portion of her claim which included half of the Receiver's fees and attorney's fees. Elizabeth maintains that during the divorce court proceedings, the magistrate determined Denis was responsible for "all receiver fees and costs assessed against Elizabeth's share of the property." (*App. Br.*, p. 14). The Trustee concedes that the magistrate's order, recommending that Elizabeth's share of the Receiver's fees and costs be assessed against Denis, was ratified by the divorce court. However, it was approved without a hearing. Further, Appellee notes the magistrate indicated he would determine the exact amount involving the Receiver within thirty days of his report, if the parties could not agree on the total amount. Notwithstanding the thirty days given to the parties to resolve this matter, the state court approved the report prior to the expiration of the thirty-day period. (*See Trustee's Ans. Br.*, p. 7).

Appellee also emphasizes that the divorce court's order ratifying the report was issued during the time Denis and Appellant had settled all of their disputes and had obtained court approval of their settlement. According to Appellee, the divorce court's intent to impose on Denis the entire cost associated with the Receiver is unclear in light of the intervening settlement between Denis and Appellant, which may have occurred before the parties even received the ratifying order, and Mr. Botton's satisfaction of the Receiver's fees claim. This uncertainty, suggests the Trustee, allowed the bankruptcy court to reassess Appellant's entitlement to this portion of her claim under applicable equitable principles.

In determining that Denis should not be held responsible for the entire amount associated with the Receiver, the bankruptcy court noted that Eliezer Botton had paid $375,000 to satisfy the

CASE NO. 07-60049-CIV-ALTONAGA

Receiver's fees and attorney's fees, and had charged the Hotel the $375,000, plus interest.  Mr.

Botton claimed the advance as part of his mortgage lien, thereby encumbering both the estate's

interest in the Hotel and Elizabeth's interest.  The bankruptcy court found it was not appropriate to

accept that portion of Elizabeth's claim which included the Receiver's fees and attorney's fees.  In

his extensive findings of fact, the bankruptcy court reasoned, upon a review of the divorce court

docket and the various state court orders in the record, that

> at least as much of the Receiver's and his counsel's efforts were devoted to dealing
> with Elizabeth's misconduct and her unsuccessful opposition to many of the
> Receiver's actions.  In light of the fact that Elizabeth both sought the appointment of
> the Receiver and litigated vigorously with him, it would be inequitable to attribute
> more than half of the Receiver's fees and costs to the [sic] Denis' estate.

(R. 162, pp. 18, 32, 51).

Appellant has not demonstrated how the bankruptcy court's determination that Elizabeth's

misconduct contributed greatly to the costs incurred by the Receiver and his attorney was clearly

erroneous.  *See Commodore Holdings, Inc.*, 331 F.3d at 1259.  Indeed, the record supports the

bankruptcy court's finding that Appellant consistently attempted to interfere with the receivership,

thereby causing unnecessary delays and costs to be incurred.  Further, given Appellant's misconduct,

the court did not abuse its discretion when it determined it would be inequitable to attribute

Appellant's share of the cost of the Receiver to Denis.  The undersigned thus finds the bankruptcy

court did not abuse its discretion when it disallowed that portion of Elizabeth's claim which included

her share of the costs associated with the Receiver.  *See In re Jazz Casino Co.*, 2004 WL at * 5; *see
also Manufacturers Trust Co.*, 338 U.S. at 310, n.7.

**C.      *The Equitable Subordination of Elizabeth's Claims***

Elizabeth challenges the bankruptcy court's determination that her claims should be equitably

CASE NO. 07-60049-CIV-ALTONAGA

subordinated to all other claims against Denis.  Appellant concedes the bankruptcy court had the authority to subordinate her claims, but contends the court's decision to do so was erroneous. According to Elizabeth, a review of the record indicates the bankruptcy court erroneously found that Denis (and his creditors) were victims of inequitable conduct by Appellant, and therefore the court's ultimate decision to subordinate all of her claims is without factual support.  (*See Appellant's Corrected Reply*, pp. 5-6).

Appellee insists the bankruptcy court did not abuse its discretion when it concluded that Elizabeth's claims should be equitably subordinated.   Salkin emphasizes that "[t]he list of unconscionable acts that Elizabeth undertook without compunction, and often through subterfuge, to injure Denis, as opposed to merely maximizing her own investment in the property, defies an innocent explanation" and strongly supports the bankruptcy court's decision to subordinate her claims.  (*See Ans*. *Br*., p. 8).

The common law principle of equitable subordination is recognized as one of the bankruptcy courts' equity powers in 11 U.S.C. § 510(c).  Section 510(c) states in pertinent part

> the court may–
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another claim or all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510.  In order to subordinate a claim, a bankruptcy court must find that (a) the claimant has engaged in inequitable conduct; (b) the conduct has injured creditors or given unfair advantage to the claimant; and (c) equitable subordination of the claim is not inconsistent with the Bankruptcy Code.  *See In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir. 1986).  When determining whether to equitably subordinate a claim, the court must consider the totality of equities in the case.

21

CASE NO. 07-60049-CIV-ALTONAGA

*In re Murphy*, 279 B.R. 163, 165 (Bankr. M.D. Pa. 2002).  Under certain circumstances, the power

of equitable subordination may be used to subordinate even the claim of a secured creditor.  *In re Tri-*

*O-Clean, Inc.*, 230 B.R. 192, 199 (Bankr. S.D. Fla. 1998) (secured claim of affiliate of management

company for debtor reduced to unsecured status).

Those in a position of influence over the debtor, such as insiders, are held to a higher standard

of proof than non-insider claimants and must establish they have acted in good faith and have not

committed any acts to the detriment of the debtor and the estate.  The Supreme Court recognized in

*Pepper v. Litton*, 308 U.S. 295, 306 (1939), that:

> [Officers', directors', and stockholders'] dealings with the corporation are subjected
> to rigorous scrutiny and where any of their contracts or engagements with the
> corporation is challenged the burden is on the director or stockholder not only to
> prove the good faith of the transaction but also to show its inherent fairness from the
> viewpoint of the corporation and those interested therein.

(citation omitted).  Thus, claims by insiders may be subordinated more easily than those of parties

who dealt with the debtor at arms' length.  *In re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1977).

In this context, the trustee bears the burden of presenting material evidence of unfair conduct.  Once

this has been done, the insider claimant may only rescue its claims from subordination by proving the

good faith and fairness of its dealings with the debtor.  *Matter of Lemco Gypsum, Inc.*, 911 F.2d

1553, 1557 (11th Cir. 1990); *N & D Properties*, 799 F.2d at 731; *Mobile Steel*, 563 F.2d at 701.

The Bankruptcy Code does not define the term "insider," rather, it provides non-exclusive

examples.  *See* 11 U.S.C. § 101(31) ("The term 'insider' includes . . . .").  "'Includes' and 'including'

are not limiting."  11 U.S.C. § 102(3).  Among the examples the statute gives are "an affiliate, or an

insider of an affiliate as if such affiliate were the Debtor."  11 U.S.C. § 101(31)(E).  "Affiliate" is

defined as including a corporation in which 20% or more of its stock is owned by the debtor.

11.U.S.C. § 101(2)(B).  The bankruptcy court determined that Lounge Corp. was such a corporation, because Denis owns 50% of the issued and outstanding common stock of the corporation.  The court further found Elizabeth, who owns 50% of Lounge Corp., to be an insider to Lounge Corp..  (*See* R. 162, pp. 5, 43).[6]

 In finding Elizabeth to be an insider, the bankruptcy court further emphasized that even where the relationship does not fit within the examples listed in the Code, a person may hold insider status. The court recognized that a former spouse may be considered an insider, as that term is used in bankruptcy law, where the relationship puts the non-debtor party in a position to exercise some degree of control or influence over the debtor.  (*See id*. at 44) (citing *In re Dupuis*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001) (noting that among the considerations for determining whether a former spouse is an insider are "whether [the spouses] . . . maintain any sort of business relationship together" and "the extent to which the parties' marital assets . . . continue to be intertwined"); *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008 (5th Cir. 1992) (finding former wife was insider under Uniform Fraudulent Transfer Act)).  Here, the court found that Appellant, as Denis' ex-wife and the mother of his children, had "the power to withhold from Denis their minor daughter's visitation rights, a power which she has threatened to use to her economic advantage in relation to the hotel."  (*Id*. at 44).  On this basis, the court found Appellant to be an insider.  (*See id*.).

The bankruptcy court further noted that even if Appellant was not an insider, her claims may be subordinated on the basis of specific wrongful conduct.  The court found Appellant had violated

---

[6] The bankruptcy court also determined that Eliezer Botton was an insider to Lounge Corp., reasoning he is "a relative of a . . . director, officer, or person in control of [the affiliate as if such affiliate were the Debtor]."  (*See* R. 162, p. 43 n. 287 (citing 11 U.S.C. § 101(31)(B)(6)).  The court noted that because Mr. Botton is an insider to Lounge Corp., he is an insider to Denis.  (*See id*.) (citing 11 U.S.C. §§ 101(15), 101(41)).

CASE NO. 07-60049-CIV-ALTONAGA

her fiduciary duties of loyalty and care in her partnership with Denis to manage the Hotel.  (*See id.*

at 45).  Specifically, the court found:

> Elizabeth had a duty to do no harm to the joint venture, a duty to hold as trustee for the partnership any benefit that she derived from the partnership property, a duty not to usurp a partnership opportunity, and a duty not to deal with partnership property on behalf of one holding an adverse interest.  She also had a duty of care in acting on behalf of the partnership.  All of these duties were to be measured by an obligation of good faith and fair dealing.

(*Id.* at 46).

The bankruptcy court determined Appellant had violated her fiduciary duties of loyalty and

care.  The court emphasized

> She misused Lounge Corp. in making a commercially unreasonable lease with Swim & Fun Wear for her benefit and to the detriment of Denis and in using the Swim & Fun Wear lease to attempt to shift the bulk of the value of the [Hotel] to herself.  She refused to return to mediation in January 2001 as she had previously promised.  She made a secret pact with her brother to use her funds to purchase the first mortgage when it was on the verge of ( but not actually in) default, and to subject Denis thereby to five years of 18% interest, and through the vehicle of Eliezer's refusal to accelerate the mortgage debt, to accrue unjustified late charges.  She unlawfully forced Denis to give her a consent judgment for $2,500,000, an amount grossly in excess of Denis' actual obligations to her.  She engaged in a long series of unreasonable (and uniformly unsuccessful) objections, motions, and appeals, attacking either the City First second mortgage, the sale to Saal, or the Receiver and his counsel generally, causing the Receiver's and Receiver's counsel's fees to increase greatly.  She rented out one of the retail spaces in complete disregard of the receivership.  She interfered with tenants' relationships with the Receiver.  She refused the Receiver's demand that she pay rent or vacate her store despite Denis' having returned his store premises to the Receiver.

(*Id.* at 46-47).

A claim may be subordinated only to the extent necessary to offset the harm caused by the

claimant to the debtor and its creditors.  *In re Mobile Steel*, 563 F.2d at 701.  In reaching its decision

to equitably subordinate all of Elizabeth's claims, the bankruptcy court determined the damages

24

CASE NO. 07-60049-CIV-ALTONAGA

suffered by Denis and his creditors.  The court found the direct damages to Denis and his creditors were the difference between the amount of Denis' equity in the property at the time that Elizabeth's conduct became an unfair obstacle to the sale of the property and the amount of the estate's equity in the property today.  (*See* R. 162, p. 51).  The court relied on the "month-by-month back-up data," attached to an exhibit (Exhibit 201) presented during the adversary proceeding, to make its determination.  (*Id*.).

The court attributed to Elizabeth part of the diminution of Denis' equity.  The court found that "at least one half of the $375,000 in [Receiver] fees were attributable to Elizabeth's misconduct or to the delay in closing caused by her misconduct."  (*Id*.).  The court further found that the delay in closing resulting from Elizabeth's misconduct began no later than February 2001, when Elizabeth insisted on shifting $800,000 of value in a $4,850,000 contract to Swim & Fun Wear.  On these bases, the court determined that Elizabeth's total claim of $538,501.35 was exceeded by the damages she caused to Denis' equity in the Hotel, and thus subordinated her claims to the claims of all other creditors.  (*See id*.).

The bankruptcy court recognized Denis suffered consequential damages as well, such as one-half of the loss in value of Lounge Corp., as a result of Appellant continuing to pay herself $2,000 per week for her long distance[7] oversight of the Hotel when she had a competent full time manager on site.  Appellant also chose to defend a treble damages overtime suit for which her unsuccessful defense was that Lounge Corp. should not have to pay for damages left behind by a court-discharged Receiver.  Ultimately, the bankruptcy court determined it was not necessary to catalog the

---

[7] Elizabeth was a resident of New York for most of the relevant period.

consequential damages suffered by Denis because Appellant's entire claim had been subordinated. The court reasoned that calculating the consequential damages would merely increase the quantum of harm suffered by Denis' estate, and because the court had already found that harm exceeded Appellant's claims, the additional calculation would be a waste of judicial labor. (*See id*. at 51-52).

The record supports the bankruptcy court's finding that Appellant's entire claim should be subordinated. The bankruptcy court's review of the history of the case was exhaustive.   The bankruptcy court catalogued the acts committed by Elizabeth, and considered and identified the harm she caused.   Appellant has not shown the factual findings upon which this decision was made to be clearly erroneous.   The court's finding that Elizabeth was an insider who used her position to the detriment of the estate, as well as to the detriment of other creditors, is amply supported by the evidence.  *See In re N & D Properties, Inc*., 799 F.2d at 731; *see also Klay*, 376 F.3d at 1096. Further, the record indicates that Elizabeth failed to establish she acted in good faith and was fair in her dealings with Denis.  *See In re Lemco Gypsum, Inc*, 911 F.2d at 1557.  Thus, she was unable to satisfy her burden of proof and successfully rescue her claims from subordination.  *See id*. Accordingly, the bankruptcy court did not abuse its discretion when it equitably subordinated Appellant's claims.

**D.**    ***The Bankruptcy Court's Determination That Elizabeth Has No Entitlement to Any Proceeds From The Sale of The Hotel In Excess of $5,850,000***

Elizabeth maintains the bankruptcy court erred when it ruled she is not entitled to receive any portion of the proceeds from the sale of the Hotel that exceeds $5,850,000. (*See Appellant's Brief*, p. 23).  Specifically, Elizabeth challenges the bankruptcy court's determination that she is not entitled to any portion of the $2 million fund Saal agreed to pay to the estate under the Settlement Agreement

CASE NO. 07-60049-CIV-ALTONAGA

between Saal and the Trustee.

As noted, after the involuntary bankruptcy proceedings commenced against Denis, Saal offered to pay an additional $2 million to the estate in exchange for the Trustee's agreement to request that the bankruptcy court assume the Saal Contract (for the sale of the Hotel). The Trustee requested the assumption of the Saal Contract and the bankruptcy court approved that request. The court also determined Elizabeth was not entitled to any portion of the additional $2 million Saal agreed to pay to the estate. In reaching its determination, the court reasoned that Appellant was still bound by the Saal Contract, previously approved by the divorce court, pursuant to which the Hotel would be sold for $5.85 million, and Appellant, as joint owner of the Hotel, would be entitled to half of that sum. The court explained that Elizabeth would have been bound by the $5.85 million offer but for the filing of the involuntary bankruptcy petition against Denis. The filing of the bankruptcy petition created additional legal issues which caused Saal to offer an additional inducement to the Trustee in order to move forward with the purchase of the Hotel. The court concluded that its decision to deny Elizabeth's request for a portion of the $2 million did not affect her rights under the Saal Contract.

Elizabeth contends she is entitled to not only her share of the sale proceeds from the Hotel, but she is also entitled to a portion of the $2 million. According to Elizabeth, the bankruptcy court had no authority, under 11 U.S.C. § 510(c), to equitably subordinate her rights to the $2 million as a non-debtor, co-owner of the estate property. Appellant further asserts the court's ruling was in violation of the legal standards of equitable subordination and was clearly punitive in nature.

Appellee asserts this issue was addressed by the Court in *Chira I*, is currently under review before the Eleventh Circuit Court of Appeals (pending the decision here), and should not be

CASE NO. 07-60049-CIV-ALTONAGA

considered again except in the present appeal of *Chira I*. (*See Ans. Br.*, p. 12). Intervenor, Jose Saal, emphasizes the bankruptcy court did not subordinate or abrogate any of Appellant's claims or rights to the $2 million because Appellant has no claims or rights to this fund. Saal asserts "if anything, the [b]ankruptcy court looked to the facts and equities in holding that Elizabeth should not be equitably rewarded with a portion of the $2,000,000 to which she has no legitimate claim." (*Intervenor's Brief*, p. 4).

Contrary to Appellant's contention, the bankruptcy court did not base its decision regarding the $2 million premium on equitable subordination grounds pursuant to section 510(c).[8] Rather, the court considered the parties' agreement to sell the Hotel, as well as the agreement between the Trustee and Saal, and determined on equity grounds that Elizabeth was not entitled to any portion of the $2 million fund. (*See* R. 162, p. 49). In finding Appellant was not entitled to half of that fund, the bankruptcy court noted that its determination was in accordance with the language of the Settlement Agreement between the Trustee and Saal that all of the extra funds would be paid to the estate. (*See id.*).

The bankruptcy court's findings with respect to Appellant's rights, if any, to the $2 million fund were incorporated in another order issued by the bankruptcy court, the Order Granting Trustee's Motion to Clarify Order Granting Motion to Assume Executory Contract and Approving Settlement Agreement. That Order was appealed by Appellant to this Court, in case number 07-60199-Civ-Altonaga, and was briefed and argued in a consolidated case, case number 06-61410-Civ-Altonaga (*Chira I*). On April 13, 2007, the undersigned issued her decision in case number 06-61410,

---

[8] As previously noted in this Order, under section 510(c), claims against a debtor's estate may be subjected to a priority inferior to those of secured or unsecured creditors under the principles of equitable subordination. *See In re N & D Properties*, 799 F.2d at 731.

affirming the bankruptcy court's findings regarding the $2 million (as well as the bankruptcy court's decision regarding the assumption of the Saal Contract). *See In re Chira*, No. 06-61410, 2007 WL 1160183 (S.D. Fla. April 13, 2007).

The Court's affirmance of the bankruptcy court's orders has been appealed. Accordingly, the Court will not reconsider the issue regarding Appellant's rights, if any, to a portion of the $2 million, as this issue was previously raised by Appellant, considered and ruled upon by the Court, and is currently under review. *See Schwartz v. NMS Industries, Inc.*, 575 F.2d 553, 554-55 (5th Cir. 1978) (noting that a decision of a legal issue or issues by an appellate court establishes the law of the case and must be followed in all subsequent proceedings in the same case, in the trial court, or on a later appeal in the appellate court); *see also LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (when there are multiple appeals taken in the course of a single piece of litigation, law of the case doctrine holds that decisions rendered on the first appeal should not be revisited on subsequent trips to the appellate court) (internal citations omitted).

### III. CONCLUSION

In accordance with the foregoing analysis, it is

**ORDERED AND ADJUDGED** that the bankruptcy court's Final Judgment is **AFFIRMED**. This matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this Order.[9]

The Clerk of the Court is instructed to **CLOSE** the case.

---

[9] The parties conceded error in a mathematical error of $800 on Appellant's unsecured non-priority claim.

CASE NO. 07-60049-CIV-ALTONAGA

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 16th day of November, 2007.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

30